In Re: Appeal of Turtle Creek Area School District and Turtle Creek Borough, Appellants *v.* Board of Property Assessment, Appeals and Review of the County of Allegheny, Pennsylvania, with Notice to Allegheny County Industrial Authority, Appellee.

In Re: Appeal of Allegheny County Industrial Authority et al. Turtle Creek Area School District and Turtle Creek Borough, Appellants.

Argued October 7, 1981, before President Judge CRUMLISH, JR. and Judges ROGERS and BLATT, sitting as a panel of three.

*Christopher M. Fleming*, with him *G. N. Evashavik, Evashavik, Capone, Evans & Della Vecchia,* for appellants.

*Harvey E. Robins*, with him *Eric F. Solomon, Brennan, Robins & Daley,* and *William J. Fahey* and *John M. Silvestri,* for appellees.

OPINION BY JUDGE ROGERS, December 4, 1981:

The Allegheny County Industrial Authority is the owner of real estate located in the Borough of Turtle Creek and the Turtle Creek Area School District which it leases to a private developer named Penn Plaza, Inc. The Allegheny County Board of Property Assessment, Appeals and Review (Board) fixed

the assessment of the property for local tax purposes at $121,000 for the year 1978. On March 9, 1978, an appeal from the assessment was filed on behalf of the borough and school district. The hearing of the appeal did not take place until November 14, 1979, when the Board heard evidence adduced by, or on behalf of, the municipal subdivisions and, as authorized by Section 11 of the Second Class County Assessment Law,[1] 72 P.S. §5452-11, took under consideration both the 1978 and 1979 assessments. The Board declined to change the 1978 assessment of $121,000 but increased the 1979 assessment to $171,000.

The Industrial Authority and Penn Plaza appealed the Board's order to the Court of Common Pleas of Allegheny County which did not change the $121,000 assessment for 1978 but reduced the 1979 assessment to $121,000. The court additionally gave specific leave to all the parties to file an appeal to the Board of the 1980 assessment, although the time allowed for such an appeal had passed at the time of its order.

A certified mail notice of the appeal to the Board and of the scheduling of the hearing of November 14, 1979 was sent to the Industrial Authority. This notice never reached the Authority and was returned to the Board unclaimed. Therefore, the Industrial Authority did not know of the appeal or of the scheduled hearing and was not there. This was because the borough and school district's appeal to the Board was made in the following fashion: the manager of Turtle Creek Borough, using an appeal form designed for taxpayer appeals, named the Industrial Authority as the appellant, failed to disclose that either the bor-

---

[1] Act of June 21, 1939, P.L. 626, *as amended*, 72 P.S. §5452.1 *et seq.*

ough or the school district was the appellant, failed to disclose his connection with the borough, and finally and fatally provided an incorrect address for the Industrial Authority. The court below held that this so-called appeal was ineffective for any purpose. We agree.

Section 11 of the Second Class County Assessment Law, 72 P.S. §5452-11 provides, *inter alia,* that "[a]t all appeal hearings, the property owner or his agent appearing for him shall have the right to be represented by counsel and to be accompanied by witnesses or assistants." Since, as the result of the feckless manner in which the borough manager went about filing the appeal to the Board, the owner was denied its right to be present at the hearing and to contest the proposed increase of its assessment, the action of the Board increasing the assessment for 1979 was, of course, a nullity and was properly set aside by the court below.

The mistakes made in the filing of the appeal also prevented service to be made on the owners of the written notice of the change in its assessment required by Section 15 of the Second Class County Assessment Law, 72 P.S. §5452-15, which reads as follows:

At least thirty (30) days' written notice shall be given to any taxable person whose assessment shall be changed at any triennial assessment, or between triennial assessments, in a manner which would mean an increase in the taxes on such real estate if the same tax rate should prevail setting forth any change which has been made and the time and place set for hearing objections thereto.

Such notice shall be served by the board or any member thereof or by any assessor or by any

other person authorized so to do by the board upon said taxable person or may be mailed to him or her by registered mail with return receipt requested or served upon an adult person residing upon the property in question.

When no service is made upon the taxable person or upon an adult person residing upon the property assessed, said notice shall be deemed to have been properly served if tacked or conspicuously posted upon the property assessed and a copy thereof mailed to the last known address of the taxable person.

No defect in service of any such notice shall be sufficient ground for setting aside any assessment so made, but upon proof thereof being made, the taxable person shall have the right to a rehearing before the board relative to said assessment and to appeal therefrom to the court of common pleas as hereinafter provided.

A notice of the change in the assessment was sent to the Industrial Authority but again because the address was wrong, was not delivered. The appellant municipal subdivisions have attempted to erect an argument based on the last paragraph of Section 15 to the effect that all was cured by the provision there to the effect that no defects in the service of the notice should be ground for setting aside any assessment. This is unpersuasive.

In *Ross Appeal,* 366 Pa. 100, 76 A.2d 749 (1959), the Supreme Court was called upon to decide the effect of a provision of the Real Estate Tax Sale Law of 1947, 72 P.S. §5860.602, to the effect that no tax sale should be defeated because of proof that any notice of the sale required to be given by the statute was not received by the owner. In *Ross Appeal* sale notices were sent to a former owner but not to the

actual owner, in whose name the property was assessed and who occupied it when the sale notices were sent to another person. The Supreme Court held that the provision that the sale should not be invalidated because of proof that mail notice was not received by the owner did not meet the case where no notice was sent to the owner. Here the registered mail notice, due entirely to the way the appellant took the appeal, was not sent to the owner.[2]

Further, it is agreed by the parties that registered mail notice of the change did not reach the owners, that it was returned to the Board and that the notice was not personally served as provided by the second paragraph of Section 15. The third paragraph of Section 15 in clear reference to the means of service authorized in the second paragraph—personal service or by registered mail—declares that "[w]here no service is made," the property shall be posted. The phrase just quoted plainly imports that the failure of the mailed notice to reach or personal service to be made means that "no service [was] made." Although no reference is made in this record to posting required in case of no service, it may be inferred that this was not accomplished. It seems abundantly clear that service as required by Section 15 was never made on the owners with the result that the purported change in the assessments was invalid.

The Industrial Authority and Penn Plaza complain of the order below only insofar as it permits a late appeal by any party of their 1980 assessment. However, the Industrial Authority and Penn Plaza

---

[2] This notice (and perhaps the notice of the appeal hearing) seems to have been addressed and sent to the borough solicitor because in the appeal form filed by the borough manager the borough solicitor (with his address) was recorded as the appellant's (that is, the Industrial Authority) representative.

did not appeal, so cannot now be heard to complain. The appellant borough and school district have not presented a question concerning this aspect of the court's order.

Order affirmed.

### Order

And Now, this 4th day of December, 1981, the order of the Allegheny Court of Common Pleas is affirmed.